Filed 3/16/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re N.D. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B300468 (Super. Ct. Nos. 19JV00160 & 19JV00161) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES, Plaintiff and Respondent, v. N.A., Defendant and Appellant. | |

　　　　　N.A. (Father) appeals the juvenile court's disposition order removing his children from his custody and continuing their placement in foster care. (Welf. & Inst. Code,[1] § 361, subd. (c)(1).) Father contends the order must be reversed due to noncompliance with the inquiry and notice requirements of the

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

Indian Child Welfare Act (ICWA).  (§ 224 et seq.; 25 U.S.C. § 1901 et seq.)  We conditionally reverse and remand for the limited purpose of ensuring ICWA compliance.

## FACTUAL AND PROCEDURAL HISTORY

Santa Barbara County Child Welfare Services (CWS) filed an amended juvenile dependency petition alleging that Father's one-month-old twin children were at substantial risk of harm based on their "failure to thrive."  The petition also alleged that Father had a criminal history, including domestic abuse, and was on probation.  The children were removed from parental custody and placed in a foster home.

At the detention hearing, Father said he had Native American Indian heritage, but he was unable to identify the correct tribe.  Father believed his heritage was through his paternal grandmother.  He provided CWS and the juvenile court with the names of his father and grandmother.

The jurisdiction report stated that CWS "obtained ancestry information," including birth certificate information.  It obtained the names, dates of birth, and other information for Father, his paternal grandparents, and his paternal great-grandparents.  CWS also mailed Father an ICWA questionnaire and attempted to call him.  At the jurisdiction hearing, the court found true the allegations in the amended petition and declared his two children dependents of the court pursuant to section 300.

The disposition report stated that ICWA "does or may apply."  CWS contacted Father and the twins' mother,[2] who both said they had Native American heritage but did not know the tribes in which that heritage existed.  The report recommended the children remain in foster care.

_____

[2] Mother is not a party to this appeal.

2

At the disposition hearing, the juvenile court made no rulings on whether ICWA applied, nor did it make a ruling that the ICWA notice process was complete. It adopted CWS's recommendation and ordered the children to remain in foster care. It also ordered reunification services for Father.

**DISCUSSION**

Under ICWA, CWS has a "continuing duty to inquire whether a child [in a section 300 proceeding] is or may be an Indian child." (§ 224.2, subd. (a).) If CWS has "reason to know that the child [might be] an Indian child," it must "make further inquiry" into the child's status "as soon as practicable." (§ 224.2, subds. (c), (d) & (e).) CWS must send ICWA notices that include information listed in the statute to any tribe in which the child may be a member or eligible for membership, based on the parents' claims. (§ 224.3, subd. (a)(3) & (5).) The juvenile court must then "[t]reat the child as an Indian child" until it has determined ICWA does not apply. (25 C.F.R. § 23.107(b)(2) (2016); see *In re S.B.* (2005) 130 Cal.App.4th 1148, 1157 [federal regulations implementing ICWA are binding on state courts].)

Father argues CWS failed to comply with ICWA requirements and the juvenile court did not make findings on whether ICWA applied. He contends the court was "not authorized to proceed with foster care placement until ICWA notice has been sent and received." He is correct.

"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe." (25 U.S.C. § 1912(a); see also § 224.3, subd. (a).) "No foster care

3

placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary [of the Interior]." (25 U.S.C. § 1912(a).) "'[F]oster care placement'" means "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home . . . where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." (25 U.S.C. § 1903(1)(i); see also § 224.1, subd. (d)(1)(A).)[3]

In *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 708-709 (*Jennifer A.*), our colleagues in the Fourth Appellate District remanded a case based on the failure to comply with ICWA notice requirements. Because the disposition hearing was an "'involuntary proceeding'" in which foster care placement was a "possible" option (and one recommended by the Orange County Social Services Agency), the agency "had the obligation to comply with the ICWA notice requirements." (*Id.* at p. 700.)

Here, CWS had reason to know the children might be Indian children. Accordingly, CWS was required to comply with ICWA notification requirements at least 10 days before the disposition hearing, because the hearing was an involuntary proceeding in which CWS "was seeking to have the temporary placement continue[d]." (*Jennifer A., supra,* 103 Cal.App.4th at pp. 700-701; 25 U.S.C. § 1912(a).) Where the tribe "cannot be determined," CWS was required, at a minimum, to send notice to

---

[3] "Foster care placement does not include an emergency placement of an Indian child pursuant to [s]ection 309." (§ 224.1, subd. (d)(1)(A).)

4

the Bureau of Indian Affairs. (*Jennifer A.*, at pp. 702-703; 25 U.S.C. § 1912(a); § 224.3, subd. (a).)

Citing to *In re M.R.* (2017) 7 Cal.App.5th 886, 904, CWS argues that Father's contention is premature. There, the Court of Appeal held the father's challenge was premature where the ICWA investigation was "still ongoing" after the disposition hearing. (*Ibid.*) But *M.R.* is distinguishable. In that case, the child was placed with another parent, and not foster care, at the disposition hearing. The department thus "never sought long-term foster care placement or termination of . . . parental rights. [Citation.] ICWA and its attendant notice requirements do not apply to a proceeding in which a dependent child is removed from one parent and placed with another. [Citations.]" (*Ibid.*)

Because CWS sought continuance of foster care placement here, it was required to complete its ICWA inquiry and notification process at least 10 days before the disposition hearing.

## DISPOSITION

The matter is conditionally reversed and remanded to the juvenile court for the limited purpose of allowing CWS to comply with ICWA. If after proper inquiry and notice, it is determined that ICWA does not apply, the court's disposition order shall be reinstated.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

We concur:


GILBERT, P. J.                    PERREN, J.

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.